right? Council. Afternoon. How you doing? Please support the council. By the way, your honor, this is my son, Jonathan Kibler, who's first time in this room and his recent graduate. I'm here representing Kevin Turner. Kevin is a CPA employee here in southern Illinois. In 2005, they purchased 40 acres of unimproved land in rural Williamson County. The deed that they took in the property listed the address of the property as Gooseneck Lane. The plaque immediately before their purchase, which was 2004, showed Gooseneck Lane running directly to their property. But the truth of the matter is, the defendant in this case, the appellee, Dr. Rorick, who is a veterinarian who lives on one portion of his property about three and a half months of the year, refused the Turners access through this area of land known as Gooseneck Lane. Now, where do they see this diagram of the Gooseneck Lane running directly to their property? Where do they see that? The plaques of 1933, 1940, 1947, 1956, 1968, 1980, 1995, and 2004. In 2005, after they purchased the property, which was the next Williamson County plaque, it did not run on that plaque. But in the 2004, which is the plaque immediately preceding their purchase, it did. So they purchased in 2003? No, they purchased it in, I'm sorry, did I misspeak? They purchased it in 2005. In 2004, it does show it, I believe. When in 2005? When, what date did they purchase? I'll top my head, sir, I don't know that, but I can. I can, we can figure that out. In any event, the issue is that the plaque immediately preceding showed this, and that was testified to. Gooseneck Lane, it has two parts to it. It has a paved part that ran in front of Dr. Ward's property, and then he has an additional two-and-a-half-acre pie of property that is separated from what I'm going to call the old Gooseneck Lane, with no improvements on it except some fencing, which was in disarray. The testimony was uncontroverted in front of Judge Moore that he did not use the old Gooseneck Lane for any purpose whatsoever, that he could not say in his testimony that he had been on it in the ten years prior to trial other than to look at it immediately prior to the actual trial. He did not use the old Gooseneck Lane for ingress or egress between the two properties. In fact, it was not passable between his two pieces of property. Both pieces were fenced. One piece had a gate on it, which was inoperable, and there were scrub trees going up and down it. The old Gooseneck Lane is 300 feet long by 45 feet wide. It is depressed in nature, and according to my client, it was obvious that it had been a road by looking at it. Well, there was some discussion about a 100-year-old tree. Now, was that in the lane, or... No, that was not in the lane. That was on... Someone just gave their opinion. They thought that some of the trees in the tree line on the side of it, and the word line, I believe, is explicitly in there, could be that old. My client testified that he had walked on the old Gooseneck Lane, and that there were just a very few number of trees that were bigger than three or four inches around, and that it was primarily scrub. Okay, now, the other part is, where was the fence in relation to that tree line? Well, the fence and the tree line, I think, are the same exact thing. Okay. And the order says that said tree line contained numerous trees that are approximately 100 years old. Well, yeah, that is what the order says. It's the tree line, not the lane itself. Not in the road. Yeah, and with all due respect to Judge Moore, that was not the testimony, that there were numerous trees that were... So it's not in the road. No, not in the road. The testimony at trial was there were a few, not numerous, trees. He was incorrect. The other thing I got confused, was the tree line like 45 feet wide? Yes, sir. Yes, sir. The tree line and the fencing itself are 45 feet wide. Was there a, on the plat, was there some kind of a road easement or road... No, just the fact that it was... Platted. It was platted. Was that platted at 50 feet, 45 feet, or what? It's 45 feet wide. On the plat? It does not say. Okay. If you can look at the plats, none of these plats have any dimensions of any single road including the pavement. It's just, that's not how they do it. My client testified that he would need 15 feet of this, 45 feet, to make a driveway, that he would be responsible for all costs, upkeep, everything having to do with it, and all the responsibility of it. The property, when he purchased it, was not approved. Absolutely no dwelling or buildings on it whatsoever. The prior owner had, I guess just on foot, on, by ingress and egress, had entered through a neighbor's property. The neighbor refused access to my client once my client purchased the 40 acres that he purchased. And in the meantime, the exact time of this I do not know and was not brought out at trial and I don't think it's relevant. The neighbor had turned his property into a rental property and that there was actually a shed in the area where the prior owner of my client's property had gone in and out, I guess on foot. And so they argued, Dr. Roark argued that we should still continue to have to only have access through the front yard of the neighbor who had a shed on the property and was now a rental property and had simply refused it. In fact, if the court would look at the transcript, Mrs. Turner said that she and her children went there and that the people treated her in such a manner that she became concerned for herself and her children's safety and left. The other two possibilities of access were approximately a half a mile away. One involved going through a neighbor's front yard a half a mile away versus the 300 feet that we've got here. And another one was over 1,300 feet away and had to go through bottom wetlands to get there. So the issue really becomes whether or not the court erred in not finding one or two or one and two. I don't care which way the appellate court rules on this. I believe that number one, an easement by necessity should have been granted by Judge Moore. And number two, the evidence was uncontroverted that there was absolutely no evidence against the fact that Williamson County had never vacated the old Gooseneck Lane. The case law that I cite one case to that effect that without that there is no vacation and there is also a statutory provision which I have cited. If the court, if Williamson County had turned around and vacated it sometime since 1933 and it may go back and forth and that's the earliest platform to find, then the state law is pretty clear that this lane would then fall to all of the people around it that were close to the vacated roadway. Judge Moore said that if there ever been a road there, then it was abandoned. Well, that simply is not in the law, my understanding of it. The statute that I cite plus the pacemark versus month case shows that it has to, there's a legal process to vacation. Simply failing to maintain a road by no longer putting asphalt or gravel on it is not enough to do away with the fact that there is a roadway there. Well, was there ever a roadbed there? I mean, was there ever anything there other than a plat of it? Well, I believe that if the court would look at the Nolan photographs of my client... They're admitted into evidence in this case. What he said was that this was at a time when, and I have to be careful, I'm a horseman, I spend a lot of time in the Shawnee National Forest and you can see where a road has been because it's not only worn, it's depressed and eventually you'll start getting signs of it. And there are signs here, and my client testified, I think using his background of what he does for a living, that it was obvious that this was a road. It was depressed, it was between two fence lines, and it was lower and could clearly be seen that it was a road. Now, if you're asking me whether or not there ever been rock, there was no testimony of that, and I don't want to tell you something that's not accurate. Now, can you see that in those photographs? I believe so. Not anything to do with rock, sir. I understand that. It's depressed, yeah. It's obviously at a lower grade than the fence lines on both sides. And you can also look at the plaques. You can see where it's obvious that it came directly off of the original Goose Neck Lane. It just makes logical sense. So, if the court would also take a look at the case that both, my learned adversary and I both cite, there's not a tremendous amount of case law on this issue, and I'm surprised that there's not, but perhaps you're getting ready to make that law. Hopefully. If the court would look at Gaffney v. Bartles, which that case has been up to the 2nd District twice, and the last decision on it, I think, is the linchpin for what I'm talking about. Usually, an easement by necessity comes from a situation where you've got a piece of property that's been split off as a subservient piece from an original piece. But not always. And they go through an explanation in the Gaffney case that the court needs to take a look at what relative merits there are involved with harm to the... I guess this is the right phrase, but what you might think of as the landlord, as the parent piece of property, what harm there is to that versus the need and alternative means, and take a look at that. There's absolutely no evidence of any harm whatsoever that would occur if the court declares either that this is an easement by necessity or declares that Gooseneck Lane is in fact still open as a use for a roadway that my client can rely on. Now, on the other hand, if you do that and Williamson County turns around and vacates it, then I'll have to deal with that issue. But they haven't vacated, and it's still, according to state law, a road. I'm not intending on making this a road. I'm intending on using this as a 15-foot wide driveway so my client can improve his property. Illinois, as can be determined by taking a look at the Gacky case, really does not favor landlocked property. And my client, other than a helicopter, has no way of getting into this property, no good way whatsoever. So I'm asking the court for a reversal of Judge Moore's decision. Thank you. Thanks, counsel. Thank you, Your Honor. Thank you, counsel. May it please the court, my name is Jonathan Cantrell. I represent the defendants. You have to speak up a little bit. Thank you, Judge. Being recorded. I apologize. My name is Jonathan Cantrell. I represent Dr. Ward and his wife, June, the defendants in this case. I would like to start by stating that Gacky v. Bartels is a good case to look at on the easement issue, not so much on the public road issue. There were three counts in the amended petition that was before Judge Moore in the lower court. The first count sought an easement by necessity. The second count sought an easement by prescription. And the third count sought a declaration that this disputed tree line is a public highway. In Gacky v. Bartels, the court goes through the elements that need to be shown to get an easement by necessity. And it even explains the background of the law. These types of easements are easements by implication because the law implies that there was an intent between previous landowners that one parcel, when it becomes landlocked, should not become landlocked. And in order to do that, one of the elements they have to prove is that there was a common grand tour at some point in time. In other words, the plaintiff's parcel and the defendant's parcel were owned by the same grand tour. That grand tour severed those parcels by beating over one parcel to somebody. And the law will imply that the intention was that whomever gains title to the landlocked parcel should have access to that. In this case, there's no evidence of joint ownership whatsoever. So that element is not... There's just no evidence there, and I think the trial judge was correct on that issue, Your Honor. But if we want to go down even to one of the elements, which is to prove that this easement is necessary to prevent the property from being landlocked, and I agree with counsel that the public policy in the state of Illinois is that landlocked properties are generally disfavored. But I suppose in order not to impose an unfair burden on the servient estate, which would be my client's property, one of the things that a plaintiff has to prove is that there are no other reasonable alternatives. That's why they get this relief against our clients, hypothetically. And in this particular case, not only did they fail to rule out access to their parcel from the north, south, or east, our land is on the west side, they admitted unequivocally that there's a driveway that exists on the property to the south, and we refer to it as the Jeff Pulley property because he's the owner. Counsel alluded to that very sort of argument, referred to it as going through the front yard. It goes along the front yard. It's a gravel driveway. There are photographs of it in the record, and it stops mere feet from the southern boundary of the plaintiff's property. The plaintiff admitted that that driveway was there. The plaintiff admitted that that driveway is more convenient to access this property than going across the defendant's land. When you say the defendant's land, are you saying that the property was not a roadway? You're saying that's the defendant's land. The defendant's land was never a roadway, Your Honor. So how'd that plat since 33 to whatever? That was all wrong all that period of time? That's a good question, Your Honor, and I'll jump into my, real briefly if you don't mind, I'll just easement by prescription the second count. I just want to go, if it wasn't platted as a roadway, when was it vacated, and how did that happen? Thank you, Judge. I'll answer your question. The plats show, 1933-1940 plats, show a road that travels east and west, appears to go towards the plaintiff's property, stops and veers down at a 90-degree angle. From that, I suppose their position is that it obviously must have come all the way to our client's 40-acre parcel, because it veers down at a 90-degree angle, and the parcels are long section lines. The plaintiff's land and the defendant's land are bordered by a section line, but on those initial plats, there are no section lines. So we can't tell where, just by looking at the plat, where it was intended to, how far the road was intended to go before it veered to the south. Subsequently, the road is built. When the road is actually built, it curves to the south before reaching the plaintiff's parcel, hence the name, Gooseneck Lane. The plats are changed over time, and I believe it starts in the 80s. One of the plats shows a curve, but it still appears on the plat that the curve is touching that southwest corner of the plaintiff's property. Same thing for the plat from the 1990s. Finally, in 2005, there's a plat that's recorded that shows the curve before you get to the plaintiff's land, and then the road curves like this. Again, I think the authorities used the name Gooseneck Lane as soon as they built the road, and that's an indication of what the county actually accepted as a dedication. And in the case of Bigelow v. Rolling Meadows, the court in that case goes through the different ways you can approve or establish a public roadway. The first one is statutory dedication pursuant to the Plat Act. The plat has to be unequivocal, it has to be clear. I don't think we have that in this case based on the changes in the plats. Something else the Plat Act does is states when a road is altered, the authorities have a duty to report a new plat. And although they may have done it late in this case, it's apparent that Williamson County ultimately reported a plat that shows how the road was built. What we do have, we have aerial photographs on the record that were taken in the early 1980s by the defendant that show Gooseneck Lane as it sits today, curving to the south, not touching the plaintiff's property. It also shows a very dense tree line. What the plaintiffs are referring to is the old Gooseneck Lane, a very dense tree line. The photographs of some of those trees, there may be a dispute over how old they are, but they're very large trees, and in the aerial photograph from the 1980s, if you compare that to the Google Earth photograph from shortly before trial that was admitted into evidence, they look virtually identical. One of the circumstantial pieces of evidence that the plaintiffs relied upon to try to establish that there may have been an old roadway, that the plaintiff testified that usually the existence of fences 45 feet apart approximately suggests there may have been a road there. That supposition was debunked when the defendant, Dr. Brewer, testified he erected those fences himself in the early 1980s after he purchased the property. What's been referred to as the old Gooseneck Lane, he hasn't been on it in 10 years because it's impenetrable. It's apparent from those photographs there are many trees in that line, and on top of that there's a lot of brush. So as to the public highway, Your Honor, the plats are not clear in my opinion, and that's the first step is a proper plat of a highway. But the second element that has to be proven is that that was in fact accepted. And there's no acceptance by Williamson County in this case of that tree line, because we know they built the road going to the south and not touching the plaintiff's property. And I think acceptance is a critical element. Obviously Bigelow states that. Because absent requiring acceptance, anybody could dedicate their land and suggest to the county, well, I've dedicated this strip of land on my property. It's now your obligation to come and improve this land by building a road, incur potential liability through negligent construction and negligent maintenance. So I think the evidence is clear and unequivocal that Williamson County accepted Gooseneck Lane in the state that it is today, which is curving to the south and not touching the plaintiff's property. The second way you can establish a public highway is through common law dedication. And that obviously is necessary sometimes because the platting wasn't done correctly. So what replaces the platting is some kind of evidence of an intention of the two parties, both the owner that dedicates the land and the public authority to indeed have a highway there. There has to be an intention for that to happen. Then there has to be acceptance again by the public authorities. And the third element for common law dedication is unequivocal evidence of the first two elements. And that goes back to my argument on the statutory dedication. There's just no acceptance of that tree line by the public authorities in this case. So common law dedication doesn't apply. The only other two ways for a public highway to be established is by prescription. Obviously we're talking about the elements of adverse possession, and that hasn't happened in this case. We know there are dense trees in that area that they would like to be a public highway. And the final way is by condemnation proceedings. And obviously that would be a matter of public record. Presumably if public authorities had condemned the property, they would have built a road there. We would see that in the evidence. If the court has no more questions for me, then that's all I have. And I'd ask the court to affirm the trial court's decision on all issues. Thank you, counsel. I looked back up the timeline, and I misspoke. I apologize. The purchase of the property was in 2004. The plaques showing the old Gooseneck Lane as being platted are 1933, 1940, 1947, 1956, 1968, 1980, and 1995. 1995 is the last plaque before my clients purchased the property in 2004. 2005 was the plaque done a year afterwards that shows the change in Gooseneck Lane. Thank you. The logical hole in counsel's argument about someone just saying they're giving property to the county and that therefore it's a road that the county has to maintain is that in that circumstance, it would never appear on the official Williamson County plaque as a road. In this case, for 60 years, Williamson County declared that this area in the 45 feet between the two fence lines were a road. You can go to the courthouse, you can look up the plaque, you could buy the plaque at a surveyor's office, and it would show that this road went to my client's property. That is why when they purchased the property, the deed said that the address of the property was Gooseneck Lane because at the time that they bought it, that was the address of the property. The only other thing that I could say to the court is that the court has to balance two things. If the court would want to take a look at Dr. Roark's testimony, because I really didn't understand why we had gone through this amount of cost and litigation, years of litigation, over 45 feet by 300 feet that we were asking for 15 feet of it that we did not believe was going to affect him in any way whatsoever, was not going to cost him a dime, and we were going to be totally responsible for it, why a party would want to involve in that cost? Can I ask him that? And he testified, not only in deposition, but he testified at trial. He said it was a matter of principle. No cost to him, no harm to his property. It did not defeat the use of his property in any kind of way. It was simply a matter of principle. So really, from my client's perspective, what the court must balance here is which principle is more important? My client's use and enjoyment of his property, which he has no other way to have except through this, no other reasonable way. Yes, there are other potential ways, but building a road for a half a mile that's never been a road versus having a driveway on something that has been a road and you need 300 feet of it, that is you're only asking for the use of a third of what had been the actual roadway. I think if the court balances those things out, I think the court will see that the trial court errs and will reverse it. Thank you. Any counsel? I'm going to talk with Judge Chapman. She'll be here next week and talk to her and then you guys. Thank you.